IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WINTERNALS SOFTWARE LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A06CA269 SS |
| | § | |
| BEST BUY CO., INC., BEST BUY STORES, | § | |
| L.P., BEST BUY PURCHASING LLC, and | § | JURY TRIAL DEMANDED |
| GEEK SQUAD, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Winternals Software LP ("Winternals" pronounced "Win-ternals") files this original complaint for copyright infringement, circumvention of copyright protection systems, and misappropriation of trade secrets against Defendants Best Buy Co., Inc. Best Buy Stores, L.P., Best Buy Purchasing LLC, and Geek Squad, Inc., hereinafter collectively referred to as "Defendants," and allege as follows:

### I.
### PARTIES

1. Winternals is a Texas limited partnership with its principal place of business at 3101 Bee Caves Road, Suite 150, Austin, Texas 78746.

2. Upon information and belief, Best Buy Co., Inc. ("Best Buy") is a Minnesota corporation with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Best Buy can be served with process by serving National Registered Agents, Inc., 1614 Sidney Baker Street, Kerrville, Texas 78028.

3. Upon information and belief, Best Buy Stores, L.P. is a wholly owned subsidiary of Best Buy. Best Buy Stores, L.P. is a Virginia Limited Partnership with its principal place of

691203_6.DOC

business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Best Buy Stores, L.P. can be served with process by serving National Registered Agents, Inc., 1614 Sidney Baker Street, Kerrville, Texas 78028.

4. Upon information and belief, Best Buy Purchasing LLC is a wholly owned subsidiary of Best Buy. Best Buy Purchasing LLC is a Minnesota LLC with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Best Buy Purchasing LLC engages in business in Texas, but has not designated or maintained a registered agent for service of process in Texas. Best Buy Purchasing LLC can be served with process in accordance with the Texas Long-Arm Statute by serving the Texas Secretary of State as agent for Best Buy Purchasing LLC.

5. Upon information and belief, Geek Squad, Inc. ("Geek Squad") is a wholly-owned subsidiary of Best Buy. Geek Squad is a Minnesota corporation with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Geek Squad engages in business in Texas, but has not designated or maintained a registered agent for service of process in Texas. Geek Squad can be served with process in accordance with the Texas Long-Arm Statute by serving the Texas Secretary of State as agent for Geek Squad.

## II.
## JURISDICTION

A. **Subject Matter Jurisdiction**

6. This is an action based in part on copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1332(a) and 1338(a).

### B. Personal Jurisdiction

7. This Court has specific personal jurisdiction over Defendants because, upon information and belief, a substantial part of the unlawful acts of Defendants, as hereinafter alleged, have been and were, in whole or in part, carried out and made effective in the State of Texas.

8. This Court has general personal jurisdiction over Defendants because Defendants have engaged in continuous, systematic and extensive contacts with, and activities in, the State of Texas. Defendants solicit business and sell products and services to customers in Texas. Defendants have purposefully established the necessary minimum contacts with the State of Texas so that is was foreseeable that Defendants' conduct and connection with the state were such that they should have reasonably anticipated being haled into court here. Further, based on Defendants' contacts with Texas, maintenance of this suit does not offend traditional notions of fair play and substantial justice.

## III.
## VENUE

9. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1400(a).

10. Upon information and belief, a substantial part of the unlawful acts of Defendants, as hereinafter alleged, have been and are, in whole or in part, carried out and made effective within the Western District of Texas. Also, representatives and agents of Defendants reside or may be found within the Western District of Texas.

## IV.
## FACTS

### A. Winternals' Stolen Software

11. Established in November 1996 by Bryce Cogswell, Ph.D. and Mark Russinovich, Ph.D., Winternals is based in Austin, Texas.

12. Winternals is a leading provider of systems recovery and data protection solutions for computer systems. Winternals' products support IT professionals in numerous ways, emphasizing system repair and data recovery, and include system performance enhancement, system diagnostics and troubleshooting, and data accessibility solutions.

13. Winternals and its founders are pioneers within this field and have spent considerable time, effort and capital promoting their services and products. As a result, Winternals has successfully created and marketed many advanced software utilities including, but not limited to, Winternals' Administrator's Pak.

14. Winternals' Administrator's Pak includes a complete suite of powerful, versatile software tools designed for IT professionals that allow users to repair unbootable or locked-out systems, restore lost data, remove malware from infected systems, and diagnose system and network issues. Winternals' Administrator's Pak includes, among other things, such well-known programs as ERD Commander, FileRestore, and Insight for Active Directory. Administrator's Pak and its component programs are herein referred to collectively and individually as "The Winternals Software."

15. The Winternals Software has received numerous awards in the industry, representative examples of which are attached hereto as Exhibit A, and is roundly regarded as the most powerful and complete set of administrative system tools available.

16. The Winternals Software is a copyrighted work belonging to Winternals because The Winternals Software is fixed in a tangible medium of expression that is copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101, et. seq.

17. Winternals holds Federal copyright registrations to The Winternals Software, specifically including, but not limited to, the following products: Insight for Active Directory, ERD Commander 4.2, and File Restore.

18. Winternals is the exclusive owner of U.S. Copyright Registration No. TXu1-221-964 for Insight for Active Directory, No. TXu1-219-648 for ERD Commander 4.2, and No. TXu1-225-550 for File Restore. Proof of these copyrights is attached hereto as Exhibit B. A copyright registration application for ERD Commander 5 was submitted on March 15, 2006, and separate applications for Remote Recover v3 and NTFSDOS Professional v5 were submitted on February 22 and 23, 2006, respectively. Copyright registration applications for TCPView v1.0.7; Filemon v2.0; Regmon v2.0; ADExplorer v1.0; and Crash Analyzer Wizard v1.0 were submitted on April 10, 2006. Copies of these applications are attached hereto as Exhibit C.

19. Winternals is the exclusive owner of all right, title and interest in and to the copyrights in The Winternals Software. *Id.*

20. Winternals has expended considerable time, labor, skill and money in producing, promoting, and distributing The Winternals Software worldwide. Winternals' customer list includes more than 70,000 organizations and companies worldwide, supported through a global alliance of resellers and distributors.

21. Protection of its valuable and hard-earned intellectual property is critical to Winternals' business. Winternals, like other software innovators and copyright holders, trusts that businesses and IT professionals will respect its copyrights and honor the terms of any licenses to The Winternals Software.

**B.    Winternals' Substantial Efforts to Protect its Intellectual Property**

22. The Winternals Software is protected by a copyright protection system that requires completion of an authorization procedure to obtain an activation key file before The

Winternals Software can be installed and used. Each activation key file corresponds to a different user license for The Winternals Software.

23. Each time The Winternals Software is loaded, a screen appears prominently displaying the Winternals logo. Moreover, the Winternals logo and various copyright notices appear on many of the screens displayed during use of The Winternals Software. Some of these screens also display licensee information, including the name of the registered licensee for that copy of The Winternals Software and the date any such license will expire. Representative screenshots showing the Winternals logo, copyright notices, and licensee information are attached as Exhibit D.

24. Licensing terms and conditions for The Winternals Software are included in an Electronic User License Agreement ("EULA") that licensees must read and accept before installing The Winternals Software. Additionally, a physical copy of the EULA accompanies each copy of The Winternals Software that is shipped. A copy of the current EULA is attached as Exhibit E.

25. The terms and conditions of the EULA limit use of The Winternals Software. Depending on whether the licensee has a site or user license, The Winternals Software may used only at a particular, designated location, or only by the person designated as the licensee in the activation key file. Moreover, the EULA places a strict limit on the number of copies that a licensee may lawfully make.

## C. Defendants and Their History

26. Best Buy acquired Geek Squad in October 2002. At that time, Geek Squad had approximately $3 million in annual revenues and 50 employees.

27. Within a year, Best Buy established Geek Squad "Precincts" in more than 20 stores. By 2005, Geek Squad had set up shop in virtually every Best Buy store.

28. Today, Geek Squad has over 700 locations nationwide and over 12,000 employees.

29. Geek Squad's revenues in the coming fiscal year are projected to be $280 million in operating profits on just over $1 billion in gross revenue.

30. Defendants are collectively engaged in the business of repairing malfunctioning computers, repairing crashed hard drives, containing virus outbreaks, removing spyware, etc.

31. Defendants are also in the business of selling and installing a variety of software products for their customers and are very familiar with the terms and conditions associated with typical software EULAs.

32. Defendants provide their services on-sight at Geek Squad "Precincts" in Best Buy stores. Defendants also make house calls to provide services at a customer's home or business.

D.  **Defendants' Interest in The Winternals Software**

33. In October 2005, Defendants contacted Winternals to inquire about licensing software for use both to support their internal computer systems and in their business of computer repair and maintenance for customers.

34. Prior to this time, Defendants did not possess a license for such use to The Winternals Software. After contacting Winternals, Defendants' representatives stated that a license was necessary for Defendants to "come into compliance."

35. Winternals expressed interest in negotiating a reasonable commercial license and hoped to establish a long-term business relationship with Defendants.

36. Defendants' representatives stated that they were pleased that Winternals was interested in license negotiations. Those representatives further stated that Defendants generally refused to work with people who sought to strictly enforce their rights through litigation.

37. Winternals offered Defendants a bundled license including The Winternals Software at a price of several million dollars. This proposed license would have covered approximately twelve thousand users.

38. To further facilitate the commercial license negotiations, on November 10, 2005, Best Buy Stores, L.P ("Best Buy Stores," a wholly owned subsidiary of Best Buy) and Winternals entered into a Trial and Test Agreement ("Trial Agreement"). At Defendents' request, Winternals also entered into a Confidentiality Agreement with Best Buy Purchasing LLC and its affiliates and subsidiaries. Under these agreements, Defendants agreed, among other things, to maintain in confidence all confidential information provided by Winternals to Defendants.

39. Under its terms, the Trial Agreement was to expire on December 16, 2005. That trial period was later extended, at Defendants' request, to February 1, 2006.

40. In November, following execution of the Trial Agreement and Defendants' promise not to disclose Winternals' confidential information, and Winternals' good faith reliance upon that promise, Winternals provided Defendants limited access to The Winternals Software under the terms of the Trial Agreement. The trial version of The Winternals Software provided to Defendants included a copyright protection system designed to automatically disable the software at the end of the trial period.

41. In January 2006, Plaintiffs conducted training sessions for Defendants' employees, including members of Defendants' Geek Squad, regarding the features, operation and use of The Winternals Software.

42. At these training sessions, certain employees of Defendants approached Winternals' representatives and stated that many of Defendants' employees were very familiar

with The Winternals Software and, in fact, had already been using The Winternals Software to repair malfunctioning and "dead" computers of Defendants' customers for some time without a license. These employees expressed that they were glad to see the Defendants finally coming into compliance with Winternals by seeking a license to The Winternals Software.

43. On January 25, 2006, Defendants again contacted Winternals and expressed interest in a longer-term license than previously discussed and asked for an increased price quote reflecting this new term.

44. However, a short time later in February 2006, and much to Winternals' surprise, Defendants abruptly cut off negotiations. Defendants stated that they were no longer interested in pursuing a commercial license at that time. Defendants' unexpected announcement came before an agreement could be reached on the long-term license agreement, but after Defendants' receipt of The Winternals Software and other valuable information from Winternals.

### E. Defendants' Copying and Continued Use of Pirated Software

45. Defendants have never held a commercial license to use The Winternals Software in their business and abruptly decided to end negotiations for such a license. Nevertheless, upon information and belief, Defendants have used, and continue to use, *pirated* versions of The Winternals Software—without authorization and in violation of Plaintiff's rights.

46. Winternals has recently contacted numerous Geek Squad Precincts throughout the country and requested that they repair damaged computers. In response to these requests, Geek Squad employees arrived at the location of the damaged computer and carried out repairs utilizing pirated copies of Winternals' ERD Commander. On other occasions where the Geek Squad employee did not use ERD Commander, the employee confirmed that he or she had a copy of that software in his or her possession.

47. In one instance, a Geek Squad employee was videoed repairing a customer's computer using a pirated copy of ERD Commander. The copy of ERD Commander used in the videotape is an illegal, "cracked"[1] copy of ERD Commander. This version of ERD Commander is identifiable because the start up screen conspicuously displays the word "Gold Member" in the licensee information field next to the Winternals logo.

48. Winternals has never granted a license to any person or entity named "Gold Member." Upon information and belief, Defendants have circumvented Winternals' copyright protection system on this copy of ERD Commander and other copies of The Winternals Software.

49. In addition, at least one former Geek Squad employee has stated that Defendants frequently make use of pirated software, including The Winternals Software, in their business of repairing customer computers.

## V.
## CLAIMS

### A. CLAIM I: COPYRIGHT INFRINGEMENT

50. Winternals realleges and incorporates by reference the allegations contained in Paragraphs 1 through 49 above.

51. The Winternals Software, specifically including, but not limited to, Insight for Active Directory, ERD Commander, and File Restore, constitute original works of authorship fixed in a tangible medium of expression entitled to protection under Copyright Act, 17 U.S.C. §§ 101, et. seq.

---

[1] In the context of computer software, the term "crack" means "to copy commercial software illegally by breaking (cracking) the various copy-protection and registration techniques being used." Webopedia.com, http://www.webopedia.com/TERM/c/crack.html (last visited April 3, 2006).

52. As owner of the copyrights in The Winternals Software, Plaintiff owns the exclusive rights under 17 U.S.C. §§ 101 et seq. to reproduce and distribute, and to authorize the reproduction and distribution of The Winternals Software.

53. As shown by Defendants' actions alleged above, Defendants have made and/or procured pirated copies of The Winternals Software, and have used these unauthorized copies in their business. Each time Defendants utilized the unauthorized and pirated software to repair or service a customer's computer, Defendants committed an additional and separate act of unauthorized copying of constituent elements of The Winternals Software. Each of these acts infringe the exclusive rights of Winternals under 17 U.S.C. §§ 101 *et seq.*

54. Defendants have deliberately, knowingly and willfully copied The Winternals Software and used substantial portions thereof to repair or service their customer's computers.

55. Copyright notices are included in the user manual for The Winternals Software, the accompanying EULA, and displayed on various screens when the software is run. Defendants have knowingly and intentionally infringed, and continue to knowingly and intentionally infringe, Winternals' copyrights for The Winternals Software.

56. Defendants have illegally copied and distributed The Winternals Software to countless employees and agents for computer repair purposes and/or have knowingly condoned or encouraged copying and/or distribution by their employees within the scope of their employment, and continue to do so.

57. Defendants have reproduced and distributed illegal and unauthorized copies and/or unauthorized derivative works based upon The Winternals Software.

58. As a result of Defendants' past and ongoing willful infringement of Winternals' copyrights, Defendants have earned substantial direct and indirect profits. Moreover, as a direct

result of Defendants' past and ongoing willful infringement of Winternals' copyrights, Winternals has been and continues to be substantially harmed.

59. Defendants' infringement of Winternals' copyrights has caused, and continues to cause, substantial and irreparable harm to Winternals' business for which there is no adequate remedy at law.

**B. CLAIM II: CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS**

60. Winternals realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59 above.

61. The Winternals Software is protected by a copyright protection system, which requires completion of an authorization process and procurement of an authorization key file before The Winternals Software can be installed and used. This copyright protection system effectively controls access to the copyrighted Winternals Software.

62. As long as this copyright protection system is in place, The Winternals Software cannot be installed and used without a valid authorization key file.

63. Winternals generates and distributes unique authorization key files only to verified licensees of The Winternals Software.

64. Upon information and belief, Defendants have circumvented Winternals' copyright protection system on The Winternals Software.

65. Defendants circumvented Winternals' copyright protection system without Winternals' authorization.

66. Circumventing Winternals' copyright protection system facilitated Defendants' infringement of the copyrighted Winternals Software.

67. As a result of Defendants' circumvention of Winternals' copyright protection system, Defendants have earned substantial direct and indirect profits. Defendants are also liable

for statutory damages under 17 U.S.C. § 1203. Moreover, as a direct result of Defendants' circumvention of Winternals' copyright protection system, Winternals has been and continues to be substantially harmed.

## C. CLAIM III: MISAPPROPRIATION OF TRADE SECRETS

68. Winternals realleges and incorporates by reference the allegations contained in Paragraphs 1 through 67 above.

69. The Winternals Software includes protectable trade secrets that were developed by Plaintiffs at considerable expense, were and are not known to competitors, and provide a competitive advantage over others in the industry.

70. Winternals has invested significant time, money, and capital in developing these trade secrets. This proprietary information provides independent economic value from not being generally known to, or readily ascertainable by, Plaintiff's competitors.

71. Winternals has taken reasonable steps to maintain the secrecy of its trade secrets.

72. Given the prominent display of the Winternals logo when The Winternals Software is operated, and Defendants' past dealings with Winternals, Defendants had notice and were aware that Winternals Software contained proprietary, trade secret information.

73. Defendants have acquired Winternals' trade secrets by improper means, including, but not limited to, obtaining and using pirated versions of The Winternals Software with the knowledge that these pirated versions were unauthorized copies of The Winternals Software.

74. Moreover, Defendants obtained confidential information, including trial and testing copies of The Winternals Software, pursuant the Trial Agreement with Winternals. Winternals provided Defendants with this information in reliance upon Defendants' promise not to share or disclose any of Plaintiff's confidential information. Winternals would not have

provided such information but for Defendants' promise of confidentiality and promise not to reproduce or distribute Plaintiff's software without authorization or consent.

75. The illegal and improper actions of Defendants, as described above and below, constitute misappropriation of Plaintiff's trade secrets.

76. Defendants' misappropriation of Winternals' trade secrets has substantially harmed Winternals. Specifically, Winternals has suffered damages including lost profits, impairment of future earning capacity, diminution in the value of their businesses, and loss of trade secrets and confidential information.

77. Defendants have been unjustly enriched by their use of Winternals' trade secrets and have collected substantial profits off their unauthorized use of the trade secrets contained in The Winternals Software.

78. Defendants acted with fraud, malice and/or gross negligence in misappropriating Winternals' trade secrets and are therefore responsible for exemplary damages.

79. Moreover, Defendants' misappropriation of Winternals' trade secrets has caused, and continues to cause, substantial and irreparable harm to Winternals' business for which there is no adequate remedy at law.

## VI.
## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY AND PERMANENT INJUNCTION

80. Winternals realleges and incorporates by reference the allegations contained in Paragraphs 1 through 79 above.

81. Winternals requests a temporary restraining order, a preliminary injunction and, following a trial on the merits, a permanent injunction, pursuant to Federal Rule of Civil

Procedure 65, barring Defendants' continued use, copying, and distribution of unlicensed versions of The Winternals Software.

82. Pursuant to Local Rule CV-65, Winternals' Application for a Temporary Restraining Order and For a Preliminary Injunction is filed on an instrument separate from this Original Complaint. Winternals hereby incorporates by reference the facts and arguments set forth in its Application, filed contemporaneously herewith.

## VII.
## CONCLUSION

83. By their actions alleged above, Defendants infringed, and will continue to infringe, Winternals' copyrights by reproducing, distributing, and continuing to commercially exploit, without license or authorization, The Winternals Software, its component programs, and/or unauthorized derivative works.

84. Defendants have also willfully circumvented Winternals' copyright protection systems for The Winternals Software in violation of 17 U.S.C. § 1201.

85. Moreover, Defendants have acted with fraud, malice and/or gross negligence in misappropriating Winternals' trade secrets in The Winternals Software and have used, and continue to use, those trade secrets for their own substantial gain.

86. Plaintiff is entitled to recover from Defendants the damages that Winternals has sustained and will sustain, and any direct and indirect profits and advantages obtained by Defendants as a result of Defendants' acts alleged above. At present, the amount of such damages, profits, and advantages cannot be fully ascertained by Plaintiff.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

A. That the Court find that Defendants have infringed Winternals' copyrights in The Winternals Software, including, but not limited to, Insight for Active Directory, ERD Commander and File Restore;

B. That the Court find a substantial likelihood that Defendants will continue to infringe Plaintiff's copyrights in The Winternals Software unless enjoined from doing so;

C. That Defendants and their directors, officers, employees, independent contractors, agents and representatives, and all other persons in active concert, privity or in participation with them, be temporarily restrained and preliminarily and permanently enjoined from directly or indirectly using, copying and distributing The Winternals Software and any derivative works;

D. That Defendants, and their directors, officers, employees, independent contractors, agents and representatives, and all other persons in active concert, privity or in participation with them, be ordered to immediately deliver to the Court for impoundment (and destruction upon entry of final judgment against Defendants) all illegal, unlicensed copies of The Winternals Software in their possession, custody or control together with an accounting, to be provided to Winternals, of: (1) the number of all such copies in Defendants possession, custody or control; (2) where each such copy was found; (3) the identity of the individual or individuals having possession, custody or control of each such copy at the time it was found; and (4) a sworn explanation of how each such copy was obtained, duplicated and/or disseminated, including the names of all persons involved in such activity for each such copy;

E. That Defendants file with the Court, and serve on Winternals, within ten days after service of the Court's temporary restraining order, a report in writing and under oath setting forth, in detail, the manner and form in which Defendants have complied with the Court's order;

F. That Defendants be required to account for all gains, profits, and advantages derived from its infringement of Plaintiff's copyrights, circumvention of Plaintiff's copyright protection systems, and/or misappropriation of Plaintiff's trade secrets;

G. That judgment be entered for Plaintiff and against Defendants for Plaintiff's actual damages, lost profits, and for any direct or indirect profits attributable to the infringement of Plaintiff's copyrights, circumvention of Plaintiff's copyright protection systems, and/or misappropriation of Plaintiff's trade secrets;

H. That Defendants pay Plaintiff statutory damages under 17 U.S.C. § 1203 for each act of circumvention of Plaintiff's copyright protection systems;

I. That Defendants pay Plaintiff exemplary damages for acting with fraud, malice, or gross negligence in misappropriating Plaintiff's trade secrets;

J. That Defendants pay Plaintiff's costs and reasonable attorneys' fees; and

K. That the Court grant such other, further and different relief in law or in equity as the Court deems proper under the circumstances.

## IX.
## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues raised in Plaintiff's Original Complaint.

Dated: April 11, 2006.

Respectfully submitted,

_____
David B. Weaver
State Bar No. 00798576
Adam V. Floyd
State Bar No. 00790679
Michael D. Marin
State Bar No. 00791174
Christopher L. Peele
State Bar No. 24013308
Joseph D. Gray
State Bar No. 24045970
VINSON & ELKINS LLP
2801 Via Fortuna, Ste. 100
Austin, Texas 78746
Telephone: 512.542.8561
Telecopier: 512.236.3476

COUNSEL FOR PLAINTIFF
WINTERNALS SOFTWARE LP

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

## Notice of Document/Attachment(s) Not Imaged but Stored with Document in Case File

### See Original File to View/Copy Document/Attachment(s)

Civil Case No.    A-06-CV-269

Winternals Software LP

VS.

Best Buy Co., Inc.; Best Buy Stores, LP; Best Buy Purchasing, LLC and Geek Squad, Inc.

Attachments to
Document #:    1

Description:    Complaint

File Date:    4/11/06

Prepared by:    af

**This sheet to be imaged as the last page.**